IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 27 2011
CLERK, U.S. DISTRICT COURT
by_____
Deputy

MIKE PLUMLEE,                §
                             §
          Plaintiff,         §
                             §
VS.                          §   NO. 4:10-CV-685-A
                             §
CITY OF KENNEDALE,           §
                             §
          Defendant.         §

MEMORANDUM OPINION
and
ORDER

Now before the court is the motion for summary judgment filed in the above action by defendant, City of Kennedale. Having now considered the motion, the response of plaintiff, Mike Plumlee, defendant's reply, the entire summary judgment record, and applicable legal authorities, the court concludes that the motion should be granted.

I.

Plaintiff's Claims

Plaintiff initiated this removed action by the filing on May 11, 2009, of his original petition in the District Court of Tarrant County, Texas, 48th Judicial District. In his amended petition filed August 19, 2010, plaintiff alleged claims and causes of action against defendant for retaliation in violation

of Chapter 21 of the Texas Labor Code and 42 U.S.C. § 1981. Plaintiff sought damages for his alleged emotional distress, past and future lost wages, and for exemplary damages.

II.

## The Motion for Summary Judgment

Defendant contends that summary judgment is proper because plaintiff cannot establish a <u>prima facie</u> case of retaliation under either § 1981 or the Texas Labor Code, and he cannot show that defendant's legitimate reasons for its actions were a pretext for unlawful retaliation. As an additional basis for summary judgment as to plaintiff's § 1981 claim, defendant alleges that plaintiff cannot establish a custom or policy with which to hold defendant liable. Finally, defendant claims summary judgment is warranted as to plaintiff's claim for punitive damages because it is immune from such damages.

III.

## Undisputed Facts

The following facts are undisputed in the summary judgment record:

Plaintiff began his employment with defendant in 2003 as a firefighter paramedic. In 2005 plaintiff was promoted to the rank of lieutenant, the position he held at the time of his

resignation. In March of 2008 defendant hired a new fire chief, Mike McMurray ("McMurray").

In August of 2008, Edgar Freeman ("Freeman"), an African-American, applied for a firefighter position with defendant and was proceeding through the hiring process. Plaintiff, McMurray, and two other firefighters, Brian Aguilar ("Aguilar") and Andy Cleveland ("Cleveland"), all interviewed Freeman. On or around August 13, 2008, plaintiff asked McMurray what shift Freeman would be placed on if he was hired for the position. McMurray told plaintiff he could not put Freeman on plaintiff's shift because "you cannot put 'two of them together.'" App. to Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s App.") at 2. Plaintiff believed McMurray was referring to the fact that there was already one African-American firefighter paramedic, Tedvin Wright ("Wright"), on plaintiff's shift, and therefore McMurray did not intend to hire Freeman because he was black, despite his qualifications.

On August 20, 2008, plaintiff, Aguilar, and McMurray again discussed Freeman's application. McMurray again said Freeman and Wright could not be on the same shift "because you can't put blacks together." Id. Aguilar tape-recorded the conversation.

Plaintiff contacted Cynthia Henry ("Henry"), defendant's human resources director, about McMurray's comment. Henry asked plaintiff and Aguilar to provide her written statements. Plaintiff's statement, dated September 5, 2008, read:

> Cynthia,
>
> In regards to our discussions about the harassing, and discriminatory behavior from Mike McMurray. You advised us that the complaints must be in writing [sic] I have listed these on the attached.
>
> M. McMurray, in his behavior and actions has made it uncomfortable to come to work. I do not find it acceptable to continually be subject to harassment by M. McMurray, or be in [sic] environment where he can continually discriminate people [sic] based on race sex, and age.

Id. at 7. Attached to the letter were several pages detailing plaintiff's complaints against McMurray, including McMurray's comment concerning Freeman. Among other things, plaintiff also alleged that McMurray's assistant, Heather Hess ("Hess"), had told him she was unhappy and felt uncomfortable working around McMurray. Aguilar also submitted a letter with attached pages outlining all of his complaints against McMurray.

City Manager Robert Hart, Jr. ("Hart") reviewed the written statements submitted by plaintiff and Aguilar; after reading plaintiff's complaint, Hart told Henry, "If this is true, we will

be finding ourselves a new fire chief."[1] Def.'s Am. App. in Supp. of Mot. for Summ. J. ("Def.'s App.") at 7. Hart began investigating the complaints, beginning with Hess. When Hess failed to corroborate the statements attributed to her by plaintiff, Hart had her talk to Henry, in case Hess was more comfortable talking to another woman. However, Hess continued to deny any misconduct by McMurray towards her and subsequently submitted a written statement to that effect.

Hart also interviewed other firefighters, starting with Wright. In his affidavit, Wright confirms he told Hart that McMurray's statement did not bother him, he was not offended by it, and he did not "use the race card unless there actually is a racial issue." Id. at 18. Wright also told Hart of various statements allegedly made by plaintiff about McMurray, such as saying McMurray was an idiot, that plaintiff was going to get McMurray fired, and they could definitely get rid of McMurray if Wright also complained. Hart also interviewed other firefighters, who told him about other examples of plaintiff's conduct that Hart believed to be insubordination against McMurray.

---

[1] Although plaintiff questions this statement, he has adduced no evidence to show Hart neither made nor believed the statement.

5

On September 12, 2008, plaintiff, Aguilar, McMurray, Cleveland, and Assistant Chief Hinkle met with Hart. Hart stated he could not substantiate the complaint against McMurray, then announced that the meeting would be a pre-disciplinary hearing as required by defendant's personnel manual. Hart gave plaintiff a letter titled "Notice of proposed disciplinary action pursuant to Section 8.1 of the City of Kennedale Employee Handbook," which stated:

> This notice is provided as noted above of my intent to consider disciplinary action up to and including termination for the following actions:
> - Insubordination in your conduct towards the chief. This has been exhibited through your comments to your direct reports and other department personnel.
> - Placed your direct reports in a dangerous situation by withholding safety equipment and training.
> - Misuse of public funds in order not to complete the full renovation of the fire station (chief's office)
> - Official repression by having direct reports run personal errands
>
> You are hereby suspended with pay pending a review scheduled at 1:00 pm on Monday September 15, 2008 in my office in city hall. . . .

Pl.'s App. at 46. Aguilar received a similar letter and was also suspended.

Additional meetings were held between plaintiff, McMurray, Henry, and Hart, where the following occurred: Hart told plaintiff his options were termination, demotion, or resignation;

6

plaintiff challenged some of the statements in the September 12, 2008, letter; Hart gave plaintiff a severance package; and on September 26, 2008, Hart told plaintiff he intended to demote him, decrease his pay, and put him on strict probation for six months. Plaintiff instead announced that he was resigning, and was asked to write a resignation letter. Plaintiff wrote a statement saying he was resigning, effective immediately, instead of taking a demotion, decrease in pay, and six-month disciplinary probation. At Hart's suggestion, however, plaintiff wrote a second letter that simply stated "I would like to resign as of 9/26/08." Id. at 22. Hart suggested plaintiff write the second, shorter letter, so it "would look better to future employers." Id. at 5.

IV.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex

Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" in response to a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) (internal quotation marks omitted).

V.

Analysis

A. <u>Claim Under 42 U.S.C. § 1981 Fails</u>

Recovery against a municipality under § 1981 may not be predicated on a theory of <u>respondeat superior</u>. <u>Monell v. Dep't of Soc. Serv. of New York</u>, 436 U.S. 658, 694 (1978); <u>Evans v. City of Houston</u>, 246 F.3d 344, 357 (5th Cir. 2001). Rather, a municipality may be held liable under § 1981 for the deprivation of rights guaranteed by the Constitution or federal law only if the deprivation was the result of an official policy or custom. <u>Evans</u>, 246 F.3d at 358 (applying "custom or policy" test for municipality liability under 42 U.S.C. § 1983 to claim against city under § 1981).[2]

> The Fifth Circuit has defined an "official policy" as
>
> > [a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. Alternatively, official policy is [a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

---

[2] While <u>Evans v. City of Houston</u>, 246 F.3d 344 (5th Cir. 2001), concerns race discrimination pursuant to 42 U.S.C. § 1981, the Supreme Court has recently affirmed that claims of retaliation are also cognizable under § 1981. <u>CBOCS West, Inc. v. Humphries</u>, 553 U.S. 442 (2008).

Id. (internal citations and quotation marks omitted, brackets in original).

Plaintiff concedes that he has no evidence of any "persistent, widespread practice," but argues that the one-time decision against him by Hart could give rise to municipal liability if Hart is a "final policymaker." Br. in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Br.") at 15. Plaintiff further concedes, however, that Hart's actions "do not likely rise" to that level, id. at 16, but suggests that it could be considered a fact issue. Plaintiff must do more than suggest a fact issue, however, to defeat summary judgment. As plaintiff has adduced no summary judgment evidence of any custom, policy, or final policy maker upon which to base defendant's liability under § 1981, summary judgment is granted as to that claim.

B. <u>Evidentiary Framework for Retaliation Claims</u>

To evaluate claims of retaliation under either § 1981 or the Texas Labor Code,³ absent direct evidence, the court looks to the

---

³Claims of retaliation under both § 1981 and the Texas Labor Code are analyzed and evaluated in the same manner as such claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 403-4 n.2 (5th Cir. 1999). Accordingly, the court will address both claims together.

Although the court has concluded that summary judgment is warranted on plaintiff's retaliation claim pursuant to § 1981 for the reasons discussed in section V.A., <u>supra</u>, summary judgment is also warranted for the additional reasons set forth in this section.

evidentiary burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), as modified by <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003); <u>see</u> <u>also</u> <u>Aryain v. Wal-Mart Stores Texas LP</u>, 534 F.3d 473, 484 (5th Cir. 2008). This framework, in turn, requires plaintiff first to establish a <u>prima facie</u> case. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993).

If plaintiff succeeds, a presumption of retaliation arises and the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for its actions. <u>Id.</u> at 506-07. If defendant meets its burden of production, the plaintiff bears the ultimate burden of proving that either (1) the employer's proffered reason is a pretext for retaliation (pretext alternative), or (2) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was the plaintiff's protected conduct (mixed-motives alternative). <u>Keelan v. Majesco Software, Inc.</u>, 407 F.3d 332, 341 (5th Cir. 2005).

Plaintiff argues that the Fifth Circuit in <u>Smith v. Xerox Corp.</u>, 602 F.3d 320 (5th Cir. 2010), "confirmed the mixed-motive standard as the correct standard on retaliation cases," and that the mixed-motive standard "must be used in retaliation cases regardless of whether the Plaintiff presents direct or indirect

evidence." Pl.'s Br. at 19. Plaintiff further noted that he was uncertain of the correct standard for establishing the required "causal link" in light of Smith, "which did away with the 'but for' standard." Id. at 25.

Because it appears that plaintiff has misconstrued the holding in Smith, some clarification is required. In Smith, the Fifth Circuit held that in retaliation cases, as in other Title VII cases, the plaintiff is not required to present direct evidence of retaliation in order to obtain a mixed-motive jury instruction. Smith, 602 F.3d at 332. Instead, a plaintiff may argue a mixed-motive theory using either direct or circumstantial evidence. Id. However, where no evidence of the kind required for a mixed-motive theory is present, the case proceeds under a "pretext" analysis, where the "burden returns to the plaintiff to prove that the protected conduct was a 'but for' cause of the adverse employment decision." Hernandez v. Yellow Transp., Inc., --- F.3d ----, 2011 WL 1796366, at *8 (5th Cir. May 12, 2011) (internal citation omitted).

Despite his discussion of the mixed-motive alternative, plaintiff argues only pretext. Accordingly, the court will not consider the mixed-motive alternative here.

C.  The Merits

The parties dispute whether or not plaintiff has established a prima facie case of retaliation. The court concludes it need not resolve those issues, however, because plaintiff has clearly failed to adduce any evidence of pretext.

Defendant contends plaintiff resigned from his employment after Hart initiated disciplinary proceedings against him based on Hart's discovery of insubordination by plaintiff, including plaintiff's attempt to have McMurray fired. Plaintiff concedes that defendant has produced a legitimate reason for the adverse employment action. Thus, the burden shifts to plaintiff to show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."[4] Jackson v Cal-Western Packaging Corp., 602 F.3d 374, 378-79 (5th Cir. 2010) (internal citations and quotation marks omitted).

Plaintiff's primary argument concerning pretext is that the alleged insubordination was really his complaint of race discrimination against McMurray, as demonstrated by Hart's

---

[4] The pre-disciplinary letter dated September 12, 2008, identifies four separate areas of concern for which Hart was considering disciplinary action. In the motion, defendant appears to rely primarily on the first item, "[i]nsubordination in [plaintiff's] conduct towards the chief." Pl.'s App. at 46. Plaintiff addressed all of the issues in his response; however, because defendant did not rely specifically on those issues as part of its reason for its actions, the court need not address them.

13

investigation into the complaint. Plaintiff apparently contends that his complaint of race discrimination insulated him from any disciplinary action that might follow or arise from the investigation; thus, the fact that disciplinary action arose out of his complaint is, on its face, evidence of pretext.

Plaintiff's claims are similar to those made by the plaintiff in Wilson v. UT Health Center, 973 F.2d 1263 (5th Cir. 1992), where the plaintiff reported several incidents of sexual harassment. However, the employer disciplined the plaintiff and eventually terminated her employment because the employer believed she had made misrepresentations in her report of harassment and in a disciplinary report. 973 F.2d at 1266-67. Plaintiff argued that the Fifth Circuit in Pettway v. American Cast Iron Pipe Co., 411 F.2d 998 (5th Cir. 1969), interpreted Title VII as proscribing disciplinary actions based on the employer's evaluation of the veracity of an employee's allegations concerning matters protected by Title VII. Id. at 1268.

The Fifth Circuit rejected plaintiff's contention, holding instead that Pettway protected a complainant only from actions taken due to misrepresentations made in the context of EEOC proceedings. Id. The plaintiff was not protected from the

14

consequences of misrepresentations she made to her employer during its internal investigation. Id.; see also EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176 (11th Cir. 2000) (no evidence of pretext where employer discharged plaintiff/employee for lying during its internal investigation into her complaints of sexual harassment).

The same result is warranted here. Plaintiff is not immune from adverse action for misconduct merely because defendant learned of the misconduct during its investigation of plaintiff's race-discrimination complaint. Nor was defendant required to disregard what it believed to be evidence of plaintiff's misconduct because of the circumstances under which that evidence came to light. See Wilson, 973 F.2d at 1268; see also Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 n.3 (5th Cir. 1997) (the fact that adverse action occurs after employee engages in protected activity, without more, does not prove retaliation).

Nor does plaintiff's contention that Hart did not talk to either he or Aguilar during the investigation prove pretext. Plaintiff apparently intended to imply that because he did not personally interview them, Hart must not have actually investigated their complaints. Hart had several pages of detailed allegations written by plaintiff and Aguilar, however,

and plaintiff has offered nothing more than speculation to controvert Hart's statements concerning the investigation.

Plaintiff also attempts to bolster his pretext argument through his contention that he was never told how he was insubordinate to McMurray and his belief that the witness statements submitted by defendant in support of its motion appear to have been written after plaintiff resigned. As to the first point, plaintiff has directed the court to no authority holding that failure to give detailed reasons as to an employee's alleged insubordination proves pretext. Nor does plaintiff allege or present evidence that defendant has offered changing or inconsistent reasons for the proposed disciplinary action, a circumstance that could give rise to a finding of pretext. See, e.g., Gee v. Principi, 289 F.3d 342, 347-48 (5th Cir. 2002).

Even if correct, plaintiff's second point--that the witness statements were written after plaintiff's resignation--fails to establish pretext. Hart in his affidavit did not claim he obtained written statements during his September 2008 investigation of plaintiff's complaint. Rather, he stated only that he interviewed other firefighters and relied on information provided during those interviews in concluding that plaintiff had been insubordinate to McMurray.

Even if the written statements were obtained in preparation for plaintiff's unemployment hearing, as plaintiff alleged, this also fails to even hint at pretext. The unemployment hearing apparently occurred, or preparations began for it, in December 2008, only three months after plaintiff's resignation. That a city official waited until a need for written statements arose to obtain those statements fails to prove that Hart did not learn the same information during his personal interviews or rely on that information in considering disciplinary action.

Plaintiff in his affidavit also denies making negative comments about McMurray and denies that he was plotting to have McMurray fired. It is well-settled, however, that a plaintiff's self-serving denial of allegations of misconduct fails to create an issue of fact as to pretext. Jackson, 602 F.3d at 379. Despite his generalized denial, plaintiff does not controvert the statements or acts attributed to him by Wright or the other firefighters. Further, Hart was entitled to weigh all of the information given him by Wright and the other firefighters, as well as Hess's denial of the statements plaintiff attributed to her, and reach a conclusion unfavorable to plaintiff.

In considering the results of an investigation into employee misconduct, "[t]he question is not whether an employer made an

17

erroneous decision; it is whether the decision was made with discriminatory motive." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995). Merely disputing or denying the underlying facts of an investigation, as plaintiff has done, fails to create a fact issue as to the falsity of the defendant's explanation. Jackson, 602 F.3d at 379; LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007). This is because anti-retaliation laws "do not require an employer to make proper decisions, only non-retaliatory ones." LeMaire, 480 F.3d at 391.

Plaintiff argues that "[t]he combination of suspicious timing along with other significant evidence of pretext can be sufficient to survive summary judgment." Pl.'s Br. at 34 (citing Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 409-410 (5th Cir. 1999)). While plaintiff correctly stated the law, it is of no benefit to him here, inasmuch as he has failed to adduce any-- much less significant--evidence of pretext. Plaintiff has failed to "prove that [defendant's] stated reason for the adverse action was merely a pretext for the real, retaliatory purpose." Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 806 (5th Cir. 2007) (internal citations and question marks omitted).

## VI.

### Order

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action brought by plaintiff, Mike Plumlee, against defendant, City of Kennedale, be, and are hereby, dismissed with prejudice.

SIGNED June 27, 2011.

_____
JOHN McBRYDE
United States District Judge